UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY JONES, JR.                                CIVIL ACTION

VERSUS                                          NO: 06-2347

DELTA TOWING LLC, ET AL.                        SECTION: "A" (5)

## ORDER & REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 18)** filed by the

Defendant. Plaintiff opposes the motion. The motion, set for hearing on Wednesday, May 2,

2007, is before the Court on the briefs without oral argument. For the following reasons,

Defendant's **Motion for Summary Judgment (Rec. Doc. 18)** is hereby **GRANTED in part**

**and DENIED in part**.

## I. BACKGROUND

This dispute arises out of the Plaintiff's employment with Delta Towing, L.L.C.

("Delta"). The Plaintiff was employed by Delta from October 2003 until January 2005. During

that time, he worked as a deckhand aboard various vessels in Delta's marine support fleet. The

alleged racial discrimination at issue arose during his time onboard the M/V Delta Hawk, from

late May 2004 until late November 2004.

The Plaintiff filed the instant lawsuit in state court on April 20, 2006, alleging that he was subjected to racial discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.[1]  He also contends that he was subjected to unlawful retaliation as a result of reporting the racially hostile work environment to management.[2]  He alleges that the racially hostile work environment was due to the negligence, actions, or inactions of Defendants Delta Towing, L.L.C., his employer, and Michael Sanzin and Clint Waalk, his immediate supervisor and a mate, who allegedly made derogatory jokes and comments to him.[3]  In response, Defendants Michael Sanzin and Clint Waalk filed a Motion to Dismiss (Rec. Doc. 4) which the Court granted on July 28, 2006.  Therefore, Delta is the only remaining defendant.

## II. DISCUSSION

### Delta's Argument

#### Hostile Environment

Delta argues that the Plaintiff has not established the four elements necessary to set forth a hostile work environment claim.[4]  Specifically, that even assuming the comments suggested by the Plaintiff were in fact made, for purposes of this motion for summary judgment, those comments were not sufficiently severe or pervasive to defeat summary judgment.  Delta notes that more severe language than that at issue in the instant matter "has been found to fall short of

---

[1] Pla. Petition, ¶ 4

[2] *Id.* at ¶ 7

[3] *Id.* at ¶¶7-8

[4] Def. Memo in Supp. p. 14

creating a hostile work environment for purposes of Title VII."[5]  Additionally, Delta asserts that

there is no evidence that Plaintiff ever received any loss in pay, demotion, or adverse job action.

Rather, Delta contends that he received a raise following a performance evaluation.

### Affirmative Defense

Delta asserts that when the "Plaintiff utilized the complaint mechanism of the policy and

ultimately reported it to the proper channels, the complaint was promptly and adequately

addressed."[6]  Accordingly, Delta argues that it has an affirmative defense to liability or damages

under applicable case law.[7]

### Constructive Discharge

Delta asserts that the Plaintiff did not assert a constructive discharge claim in his EEOC

charge.[8]  Therefore, Delta argues that Plaintiff's claim is not properly before this court because

"[t]he United States Fifth Circuit Court of Appeal has long held that the filing of an

administrative complaint is a jurisdictional prerequisite to a claim for discrimination."[9]

Alternatively, Delta asserts that the Plaintiff voluntarily quit of his own accord and has

not met his burden of proving constructive discharge.[10]  Further, Delta argues that the same

---

[5] Def. Memo in Supp. p. 16

[6] Def. Memo in Supp. p. 18

[7] Def. Memo in Supp. pp. 17-19

[8] Def. Memo in Supp. p. 19

[9] Id.

[10] Def. Memo in Supp. p. 21

3

affirmative defense available in the context of hostile work environment claims, is also available for constructive discharge claims.[11]

### *Retaliation*

Delta asserts that because the Plaintiff did not assert a retaliation claim in his EEOC charge, he has no standing to assert a retaliation claim.[12]  Further, Delta argues that the Plaintiff's allegations of not getting an evaluation or a pay raise do not rise to the requisite level of an "ultimate employment decision" which would give rise to a claim for retaliation.[13]  Moreover, Delta contends that the Plaintiff cannot establish that he suffered adverse employment action necessary to establish a prima facie case of retaliation.[14]

### Plaintiff's Argument

### *Hostile Environment*

Plaintiff contends that his hostile work environment claim is based on repeated racial comments made by a co-worker and supervisor during a six month period of time.[15]  He contends that he reported these comments to another supervisor during this period of time but nothing was done.  Further, that "after he could not take it anymore, [he] took his complaints to the front

---

[11] Def. Memo in Supp. p. 20

[12] *Id.*

[13] Def. Memo in Supp. p. 21

[14] Def. Rep. Memo in Supp. pp. 8-9

[15] Pla. Memo in Opp. p. 4

office."[16]  Plaintiff further contends that nothing was done until he "secretly recorded the perpetrators."[17]

Plaintiff also contends that one of his evaluations was never turned in, and that the pay raise that he did receive was a general employee wide rate increase.[18]  As to his hostile environment claim, Plaintiff contends that the discrimination experienced by the Plaintiff was intentional, pervasive and regular, but that in any event, the extent of the discrimination is a determination to be made by the trier of fact.[19]

### *Retaliation*

Plaintiff contends that he was transferred to multiple boats after he produced proof of the racially hostile work environment that he was subjected to.  He contends that this constitutes the type of "tangible adverse employment action" contemplated by Title VII.[20]  Further, the Plaintiff asserts that his pay was affected as a result of transferring vessels.[21]  Thus, the Plaintiff argues that the question before the court is not whether there was an adverse employment action as Defendant asserts.[22]  Further, the Plaintiff argues that Delta's failure to timely address his

---

[16] Pla. Memo in Opp. p. 5

[17] *Id.*

[18] *Id.*

[19] Pla. Memo in Opp. pp. 5-6

[20] Pla. Memo in Opp. p. 7

[21] *Id.*

[22] Pla. Memo in Opp. p. 8

complaints before and after he made the recording evidencing the racially hostile work environment was an expression of "retaliatory animus."[23]

## III. LEGAL STANDARD

### *Summary Judgment*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

---

[23] Pla. Memo in Opp. p. 10; The Plaintiff did not fully brief his constructive discharge claim.

## IV. LAW & ANALYSIS

Title VII provides that "[i]t shall be an unlawful employment practice for an employer...to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  When a plaintiff alleges that his employer has discriminated against the plaintiff's race, the plaintiff must first present to the court a prima facie case of discrimination. *Mills v. Walmart Stores, Inc.*, 2002 WL 83644 (E.D. La.) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

### *EEOC Charge & Standing*

As an initial matter, the Court will address Delta's assertion that the Plaintiff does not have standing to assert the retaliation or constructive discharge claims.  The filing of an administrative complaint is a jurisdictional prerequisite to a Title VII action. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).  Further, a complainant must pursue and exhaust his administrative remedies prior to seeking relief under Title VII. *Barnes v. Levitt,* 118 F.3d 404, 408-09 (5th Cir. 1997).  A district court only has jurisdiction over claims addressed in the EEOC charge. *Dollis, 77 F.3d 777, 781.*

In his Complaint, the Plaintiff for the first time raised a retaliation claim against Delta. On his Equal Employment Opportunity Commission ("EEOC") charge, the Plaintiff only checked the box next to "Race" as the basis for discrimination.[24]  This is in spite of the fact that

---

[24] Def. Memo in Supp. Exh. P

"Retaliation" is a separate option on the form, and the instructions indicate to "check the appropriate box(es)."[25] Furthermore, although the EEOC charge clearly specifies a hostile work environment claim, it makes no mention of retaliation. Accordingly, the Plaintiff has not exhausted the administrative remedies which are a procedural prerequisite to his claim of retaliation. *See Mills*, 2002 WL 83644. However, even assuming that the Plaintiff satisfied the jurisdictional prerequisite, the Court finds that the Plaintiff suffered "no adverse employment action" and thus cannot establish a *prima facie* case of retaliation, as more fully discussed below.

Addressing the existence of standing on the constructive discharge claim, the Court notes that "[a] Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Dollis* at 781 (quoting *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)). The Court finds that the Plaintiff's constructive discharge claim could reasonably be expected to grow out of the hostile work environment claim he asserted in the EEOC charge. Thus, the constructive discharge claim is properly before the Court. The Court will now turn to the underlying hostile work environment and constructive discharge claims, as well as briefly address the retaliation claim.

### Hostile Work Environment

---

[25] *Id.*

To survive summary judgment on a hostile work environment claim under Title VII, an employee must establish that: (1) he is a member of a protected class, (2) he was subject to unwelcome harassment, (3) the harassment affected a term or condition of his employment, and (4) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

To determine whether a hostile work environment exists courts use a totality of the circumstances test that focuses on the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating...and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). Further, although "discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. *Id.* (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)). "For racial harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

After a review of the record, the Court finds that under the factors articulated in *Turner*,

9

the Plaintiff has created genuine issues of fact sufficient to survive summary judgment.  First, it is undisputed that the Plaintiff is a member of a protected class as a black man.  Second, the Defendant does not directly challenge that the Plaintiff was subjected to unwelcome harassment.  In addition, although the Court has not had the benefit of hearing it, the parties agree to the existence of a recorded tape of the alleged unwelcome harassment.[26]

Third, the Plaintiff has created a genuine issue of material fact as to the severity of the unwelcome harassment.  The Plaintiff alleges that "whenever he was in the room [the relief Captain and fellow employee] would use the word "nigger," and they referred to Blacks as "porch monkeys."[27]  In addition, Plaintiff alleges that his work productivity was compared to that of a slave, that he was told a story about the drowning death of a black man while out at sea, and that jokes were made about the size of black men's genitals in his presence.[28]  Plaintiff alleges that these comments were made during a six months timeframe.  After surveying applicable case law, and after a review of the record on this point, the Court cannot say that as a matter of law the alleged harassment was not severe or pervasive enough to survive summary judgment.

As to the fourth factor, the Court finds that there exists a material issue as to Delta's alleged failure to take prompt remedial action.  Although Delta had a discrimination policy in place, and appears to have investigated the matter in early December, the record is unclear as to

---

[26] The parties reference the audio recording in their various memoranda, and more recently the existence of the tape was discussed in the pre-trial conference.

[27] Pla. Memo in Opp, Exh. A

[28] Def. Memo in Supp. Exh. C

whether these actions constituted *prompt* remedial action.  The Plaintiff has alleged that he made numerous complaints over the course of his six month hitch with the M/V Delta Hawk.  Further, it appears implicit from the record that the Plaintiff contacted front office management prior to the November 29, 2004 phone call to complain of racial harassment.  Yet, there is a question about whether those individuals declined to act until the Plaintiff submitted audio proof.  It is clear that as soon as the Plaintiff submitted the alleged proof of harassment, management took the initiative to notify the individuals listed in the discrimination policy of the complaint.  Therefore, there is a genuine issue of material fact as to whether Delta took prompt remedial action.

### Affirmative Defense & Tangible Employment Action

Delta has raised a potential affirmative defense to employer liability.  In *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court held that where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, an employer is subject to vicarious liability for an actionable hostile environment.  See also *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001).  "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c).  *Id.* at 807.  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed

11

to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* This affirmative defense is available in the context of a hostile work environment claim grounded in racial discrimination. *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000); *Williams v. Administrative Review Board*, 376 F.3d 471 (5th Cir. 2004).

Therefore, the Court must first determine whether the Plaintiff suffered a "tangible employment action" for purposes of establishing the affirmative defense. *Casiano v. AT&T*, 213 F.3d 278, 284 (5th Cir. 2000). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits...[a] tangible employment action in most cases inflicts direct economic harm." *Harper v. City of Jackson Municipal School District*, 149 F. Appx. 295 (5th Cir. 2005) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

The record is clear that the Plaintiff suffered no tangible employment action. The Plaintiff worked aboard the M/V Delta Hawk for approximately 6 months, starting on May 26, 2004.[29] On August 10, 2004, the Plaintiff received an "employee performance evaluation" signed by Captain Louis Costello which rated the Plaintiff as satisfactory under various criteria.[30] Thereafter, on September 1, 2004, the Plaintiff received what was termed by Delta as a "merit

---

[29] *Id.*

[30] Def. Memo in Supp. Exh. G

increase" of five dollars more per day.[31]

On November 24, 2004, the Plaintiff ceased working onboard the M/V Delta Hawk after reporting alleged discriminatory conduct onboard that vessel. Following his report to high-level management, Delta reassigned the Plaintiff to the M/V Delta Goose beginning on December 1, 2004. During the ensuing period of time, the Plaintiff alleges that his pay was affected in that he no longer received "job pay." The Plaintiff also alleges in a supporting affidavit that he "was not given a permanent assignment," and that he was "not given work assignments."[32]

After a review of the record, the Court finds that the Plaintiff suffered no decrease in pay. The Defendant submitted two exhibits which directly controvert any assertion otherwise. First, the Defendant submitted the Plaintiff's payroll records from the date of his last hitch aboard the M/V Delta Hawk until his final paycheck on December 31, 2004. The payroll records indicate a steady rate of pay when taking into account the days missed as a result of a medical emergency.[33] Second, Delta submitted the sworn affidavit of its human resources manager which indicates that the Plaintiff's pay was not reduced when he transferred vessels.[34]

Moreover, the Plaintiff has submitted no additional evidence outside of his own assertion by way of affidavit on the issue of a decrease in pay. Accordingly, the Court finds the loss of pay

---

[31] Def. Memo in Supp. Exh. H

[32] Pla. Memo in Opp. Exh. A

[33] Def. Rep. Memo in Supp. Exh. AA; Plaintiff was paid at $105 per day from November 16, 2004 until December 31, 2004.

[34] Def. Rep. Memo in Supp. Exh BB

13

argument to be an "unsubstantiated assertion" under the applicable summary judgment standard, and thus insufficient to create an issue of fact on this issue.

Turning to the issue of work assignments, the Court finds that the Plaintiff's own deposition indicates that he was given at least one assignment, namely cranking the generators and controlling the power supply to one of Delta's vessels.[35]

Regarding transfers, the record reveals that the Plaintiff's work for the Defendant involved working on multiple vessels from the start of his employment, and that his *own request* led to a transfer to the M/V Delta Falcon. Specifically, it is undisputed that in early January 2005, the Plaintiff requested a different day of the week for his crew change. Instead of beginning his shift on Wednesdays, he requested a Thursday crew change. Thereafter, the Defendant rearranged its personnel and offered the Plaintiff a Thursday crew change onboard the M/V Delta Falcon.

Finally, the Court notes that during this entire timeframe, the Plaintiff maintained the title of deckhand. Indeed, following his transfer, the Plaintiff seemingly was satisfied with the new environment.[36] Accordingly, the Court finds that no "tangible employment action" occurred, and thus the affirmative defense outlined in *Faragher* is available to the Defendant.

Having established that Delta is entitled to raise the *Faragher* affirmative defense, the Court must evaluate whether the two necessary elements have been met. To reiterate, "[w]hen a

---

[35] Def. Memo in Supp. Exh. C, p. 165

[36] *Def. Memo in Supp. Exh. C*

14

company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the Company may avoid Title VII liability. *Hockman*, 407 F.3d 317, 329 (quoting *Nash v. Electrospace Sys. Inc.*, 9 F.3d 401, 402 (5th Cir. 1993)). Prompt remedial action must be reasonably calculated to end the harassment. *Id.* (quoting *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)). Further, "what constitutes prompt remedial action depends on the facts of the case; not every response by an employer will be sufficient to discharge its legal duty." *Id.* "Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Id.* "While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Faragher*, 524 U.S. 775.

Focusing the analysis upon the first element, it is apparent from the record that the Defendant had a "workplace harassment and discrimination policy" in place at the time of the alleged discrimination.[37] Under the discrimination policy at issue, it is clear that all complaints of discrimination "should be immediately communicated to General Counsel, Dionne Chouest."[38] In the event that she is unavailable, the policy lists two other individuals with whom a report can

---

[37] Def. Memo in Supp. Exh. B

[38] Def. Memo in Supp. Exh. B, R

be filed.  However, the policy does specify an exception for complaints arising while at sea.  In that instance, the Captain of the vessel is responsible to ensure that a report is properly communicated.  In the instance where the Captain of the vessel is accused of the discrimination, then the second Captain is the individual responsible for handling the complaint.

It is likewise apparent that the Plaintiff received this policy and agreed to its contents on October 17, 2003.[39]  Further, the record reflects that on June 8, 2004 a safety meeting was held aboard two of Defendant's vessels, including the M/V Delta Hawk, during which the aforementioned discrimination policy was discussed.[40]  The Plaintiff attended the meeting.[41]

Thereafter, on November 29, 2004, the Plaintiff contacted Jamie Baudoin, personnel coordinator for Delta.  Ms. Baudoin called her supervisor Jenny Ledet into the room in order to listen to the complaint on the speakerphone.  Thereafter, Ms. Baudoin and Ms. Ledet advised the Plaintiff that they would be initiating an investigation into his complaint immediately, and that in the meantime he would be transferred to a different vessel.[42]  The Plaintiff was subsequently transferred to a new vessel.  As a result of the investigation, the employees who allegedly created the hostile work environment, although still denying the claims, reviewed the Defendant's

---

[39] *Id.*

[40] Def. Memo in Supp. Exh. D

[41] *Id.*

[42] Def. Memo in Supp. Exh. I

16

discrimination policy and signed it on January 5, 2005.[43]

However, several matters are unclear to the Court at this time.  First, it is unclear when the Plaintiff initially complained, how many times, and to whom.  The Plaintiff has put on evidence that he complained several times prior to November 29, 2004, to someone named Mr. El Ray, his coordinator.  Moreover, the record is unclear as to whether Ms. Baudoin and Ms. Ledet were contacted before the November 29, 2004 phone call, and furthermore, whether they investigated any such claims.

Second, since the Plaintiff alleges that Michael Sanzin, his relief Captain, created a hostile work environment, there is a question as to whether the Plaintiff properly followed the procedure laid out in Delta's discrimination policy.

As the Court has found that there are genuine issues of material fact regarding whether Delta took prompt remedial action, the potential affirmative defense cannot justify summary judgment.

### *Constructive Discharge*

A hostile-environment constructive discharge claim entails something more: a plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).  Moreover, "unless conditions are beyond

---

[43] Def. Memo in Supp. Exh.'s Q, R, S

'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* Further, "when an official act does not underlie the constructive discharge, the *Ellerth* and *Faragher* analysis, we hold here, calls for an extension of the affirmative defense to the employer." *Id.*

As previously noted, whether the alleged harassment was severe or pervasive enough to constitute a hostile work environment is unclear. However, the Court finds that Delta is entitled to summary judgment as to the constructive discharge claim. Delta transferred the Plaintiff off of the vessel where the alleged offending employees worked. The Plaintiff himself noted that he had no problems with the individuals on his next vessel, and the company made very clear he would not have to work with them anymore.[44] Further, the Plaintiff indicated that he was ready to return to work.[45] On January 11, 2005,[46] the Plaintiff contacted Delta advising it that the Doctor had released him to return to work and requesting a different crew change date.[47] Delta accommodated. Then on January 12, 2005, the Plaintiff contacted Tracee Cloutier, presumably an assistant to Delta's General Counsel, to inform her that he "did not feel comfortable about returning to work."[48] However, in spite of the new assignment onboard the M/V Delta Falcon,

---

[44] Def. Memo in Supp. Exh. J

[45] Id.

[46] After a medical emergency that kept him out of work.

[47] Def. Memo in Supp. Exh. M

[48] Def. Memo in Supp, Exh. C

the Plaintiff never showed up for work again.

Furthermore, the Plaintiff's testimony regarding the sequence of events in early January 2005, is conflicting.[49] The Plaintiff asserts that "on January 1[2005] he applied for unemployment...I quit...I quit the job because of the fact that I didn't have a vessel."[50] Yet, *the* Plaintiff concedes that he contacted Ms. Baudoin following his filing for unemployment to request a different crew change. Further, the record indicates that he called Ms. Cloutier to discuss the results of the investigation.[51]

Around the same time Delta sent the Plaintiff two letters calling for a reply. Delta never received any response from the Plaintiff. The second letter dated January 24, 2007, advised the Plaintiff that it considered his absence to be a voluntary abandonment.[52]

Aside from making the same assignment argument and noting that he periodically came in contact with his alleged harassers when the boats pulled into the dock on crew change days,[53] the Plaintiff provides the Court with no evidence or specific facts which support a constructive discharge claim. The Plaintiff did assert that because of "severe emotional distress caused by

---

[49] The Court notes that the Plaintiff filed a EEOC charge on December 28, 2004.

[50] Id.

[51] It is unclear whether the Plaintiff is in agreement about the January 13, 2007 phone call.

[52] Def. Memo in Supp. Exh. N

[53] The Court notes that if the Plaintiff would have returned to work on the M/V Delta Falcon, he would not have been at the dock at the same time as the alleged harassers.

Delta towing's actions" he has been unable to return to work.[54]  However, the medical records

submitted by the Plaintiff are dated February 3, 2005 and later.  No evidence has been submitted

that the Plaintiff was seeking medical or psychiatric attention during the time frame at issue in

this case.  Accordingly, the Court finds that as a matter of law, the Plaintiff can not meet the

heightened burden placed on a plaintiff asserting a hostile work environment constructive

discharge claim.

### *Retaliation*

To sustain a retaliation claim, the employee-plaintiff must establish a *prima facie* case for

retaliation. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).  To establish a

prima facie case for retaliation, an employee must show 1) that he engaged in a protected

activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between

the protected activity and the adverse action." *Id.* (citations and internal quotations omitted).  If

an employee does not establish a prima facie case, the court dismisses the retaliation claims as a

matter of law. *Dehart v. Baker Hughes Oilfield Operations*, 214 Fed. Appx. 437, 440 (unpub. 5th

Cir. 2007)[55] (citing *Byers v. Dallas Morning News, Inc.*, 209 F. 3d 419, 429 (5th Cir. 2000)).

The discrimination complaints of the Plaintiff were protected activity.  Therefore, the

Court will focus on whether there was an "adverse employment action."  "In determining

---

[54] Pla. Memo in Opp. p. 3

[55] Under 5th Cir. R. 47.5.3 (citation of unpublished 5th Cir. opinions), this case is not
binding precedent.

whether an employer's actions constitute adverse employment actions, under our previous jurisprudence, we were 'concerned solely with ultimate employment decisions.'" *Id.* (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5ᵗʰ Cir. 2000)).  However, a recent Supreme Court decision rejected the ultimate employment standard. *Burlington Northern and Sante Fe Railway Co. v. White*,126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006).  Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.*

In the case at hand, the Court has already found that the Plaintiff suffered no tangible employment action.  For purposes of the retaliation analysis, the Court looks to a defendant's action after a plaintiff has engaged in the protected activity.  After the Plaintiff reported the discrimination on November 29, 2004, he was transferred to another vessel.  The Plaintiff acknowledged this transfer was a result of his complaint, and as an effort to remedy the alleged hostile work environment.[56]  After transferring, the Plaintiff reported no more problems.  In fact the Plaintiff noted "I was okay, because it was a different environment."[57]

Thereafter, as previously mentioned, the Plaintiff called and requested a different crew change date.  The Plaintiff was reassigned to a boat with a crew change on Thursdays, the M/V

---

[56] Def. Memo in Supp. Exh. J

[57] Def. Memo in Supp. Exh. C

21

Delta Falcon.[58]  Notably, the Plaintiff does not directly contest that he made this request, or that

he was given the option of moving to the M/V Delta Falcon.  Instead, in addressing his transfer

to the M/V Delta Falcon, the Plaintiff seems to contradict himself noting "[i]t was a good deal,

but how I'm going to crew change on the Delta Falcon and they had all their crew."[59]  Yet, the

record reveals that the Plaintiff never returned to work, regardless of his suspicions.  Delta

offered this transfer to accommodate his request, and the Plaintiff, making his own assumption,

never showed up.  Furthermore, the Plaintiff suffered no decrease in pay nor any form of

demotion during this time period.  Accordingly, the Court finds that the Plaintiff cannot establish

a prima facie case of retaliation because the Plaintiff has not shown that a reasonable employee

would have found the challenged action materially adverse. *Burlington*, 126 S.Ct. 2405, 2415.

     Accordingly;

     **IT IS ORDERED** that Defendant Delta's **Motion for Summary Judgment (Rec. Doc.
18)** is **GRANTED in part and DENIED in Part**.  The Motion is **GRANTED** insofar as it

dismisses the retaliation and constructive discharge claims.  The Motion is **DENIED** as to the

hostile work environment claim.

     New Orleans, Louisiana, Wednesday, June 6, 2007.

                                    JAY C. ZAINEY
                         UNITED STATES DISTRICT JUDGE

---

[58] Def. Memo in Supp. Exh.'s L, C

[59] Def. Memo in Supp. Exh. C, p. 166

22